## Case No. 11,961.

ROBINSON v. MUTUAL BEN. LIFE INS. CO.

[16 Blatchf. 194; 9 Ins. Law J. 73; 8 Reporter, 613.] 1

Circuit Court, N. D. New York. April 19, 1879.

ARBITRATION—CONSENT—NEW TRIAL—PRACTICE—LIFE INSURANCE—ASSIGNMENT—HUSBAND AND WIFE.

1. When the parties to an action at law have stipulated in writing to refer it to a referee, "to hear, try and determine the issues therein, and that an order may be entered accordingly," and, without such order being entered, the trial before the referee has been had, and he has made his report, such order will be considered as having been entered, and may be entered nunc pro tunc.

[Cited in Town of Lyons v. Lyons Nat. Bank, 8 Fed. 374.]

2. The stipulation is to be regarded as referring to the practice of the courts of the state in respect to references by consent.

3. A reference, by consent, of such an action, in this court, is lawful.

4. After a trial before a referee, under such a stipulation. the court has the power to grant a new trial.

5. What is a sufficient conformity, in practice, in this court, to the practice of the courts of the

1 [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission. 9 Ins. Law J. 73. and 8 Reporter, 613, contain only partial reports.]

state, in respect to the review of a trial before a referee.

6. A New Jersey life insurance company issued, at Rochester, New York. a policy insuring the life of R., in a sum named, for life, making the sum payable to the wife of R., "or assigns." The policy was to cease, if the annual premium should not be punctually paid. R. and his wife resided, at the time. at Rochester. Afterwards, R. and his wife assigned the policy to M., with the assent of the company. The assignment was, by its terms. absolute, but was intended by the parties as collateral security to M. for any premium he should thereafter pay on the policy. The annual premiums which became due after the assignment, down to the death of R., were paid to the company by M. The company paid to M. the sum insured. Afterwards, M. paid to the widow of R. a certain sum, under an agreement with her that she should receive it in full satisfaction of her interest in the policy. Afterwards, the widow sued the company to recover the sum insured, claiming that the assignment of the policy was void, under the acts of the legislature of New York, of April 1st. 1840, April 14th. 1858, March 28th. 1862, and April 18th. 1866 (Laws N. Y. 1840, p. 59, c. 80; Laws N. Y. 1858, p. 306, c. 187; Laws N. Y. 1862, p. 214, c. 70, and Laws N. Y. 1866. p. 1413, c. 656), respecting insurances of the life of a husband for the benefit of his wife: Held, that such assignment was valid, and that the plaintiff was not entitled to recover.

7. There is no decision of the courts of New York holding that such an assignment of such a policy is not valid.

8. The case of Eadie v. Slimmon. 26 N. Y. 9; Barry v. Equitable Life Soc.. 59 N. Y. 587; Wilson v. Lawrence, 8 Hun, 593; Id., 13 Hun, 238; Id., 76 N. Y. 585,—examined.

9. The agreement of the plaintiff with M., and her receipt of the money from him, was a ratification of his authority to collect from the company the amount insured.

[This was a suit by Helen S. Robinson against the Mutual Benefit Life Insurance Company to recover the amount of an insurance policy.]

J. E. Roe, for plaintiff.
James B. Perkins, for defendant.

BLATCHFORD, Circuit Judge. The defendant, a New Jersey corporation, engaged in the business of insuring lives, issued, on the 5th of February. 1858, a policy of insurance, which set forth that the company, in consideration of $63 30 paid to them by Helen S. Robinson, (the plaintiff,) and of the annual premium of $63 30 to be paid on or before 12 o'clock m., on the 5th of February, in every year during the continuance of the policy, assured the life of Homer G. Robinson, in the amount of $3,000, during the term of life. It also set forth as follows: "And the said company do hereby promise and agree, to and with the said assured, well and truly to pay, or cause to be paid, the said sum insured, to the said Helen S. Robinson, or assigns, within ninety days after due notice and proof of the death of the said Homer G. Robinson. And in case the said assured should die before the decease of the said Homer G. Robinson, then the amount of this insurance shall be payable to their children, or to their guardian, if under age, within ninety days after due

notice and proof of interest, and of the death of the said Homer G. Robinson. * * * And it is also understood and agreed by the within assured, to be the true intent and meaning hereof, that, * * * in case the said assured shall not pay the said annual premiums on or before the several days hereinbefore mentioned for the payment thereof, then, and in every such case, the said company shall not be liable to the payment of the sum insured, or any part thereof, and this policy shall cease and determine. And it is further agreed by the within assured, that, in every case where this policy shall cease, or become or be null or void, all previous payments made thereon, and all profits, shall be forfeited to the said company; and that, if assigned, written notice to be given to the company, and the party to whom the policy is transferred must sign all premium notes with the assured."

This suit is brought on the policy by Helen S. Robinson, named in it, to recover the $3,000. with interest from May 15th, 1877. The plaintiff was the wife of Homer G. Robinson, named in the policy. They both resided at Rochester, New York. He died on the 18th of January, 1877, at Rochester. The complaint alleges that the plaintiff caused due notice and proof of his death to be given to the defendant more than ninety days previous to the commencement of this suit, and on or before February 15th, 1877, "and that the proofs of same have been duly accepted and acted upon by the said defendant by payment of the amount of said insurance, but not to this plaintiff."

The answer sets up, that, on the 6th of March, 1868, the plaintiff assigned the policy to Mortimer C. Mordoff; that, on the 24th of January, 1877, Mordoff, by and under the direction of the plaintiff, caused to be duly served on the defendant proofs of loss and death of Homer G. Robinson and returned to the defendant the policy of insurance, receipted in full, whereupon the defendant paid to Mordoff the amount due thereon; and that such payment was duly authorized by the plaintiff and she has received the proceeds thereof. It sets up, as a further defence, that, prior to the commencement of this action, and on or about April 21st, 1877, the defendant paid the plaintiff in full for all claim on the policy.

This suit was commenced in the supreme court of New York and was removed into this court. The complaint was put in in the state court and the answer in this court. After answer, the parties stipulated in writing on the 11th of July, 1878, that the cause be referred to F. A. Macomber, Esq., "to hear, try and determine the issues therein, and that an order may be entered accordingly." No order of reference has ever been entered, but the parties proceeded to try the cause before the referee. The report of the referee was filed on the 26th of November, 1878. It states that the referee has heard the proofs and allegations of the respective parties, and that, from such proofs, he finds the following facts: "The defendant, a corporation duly organized under the laws of the state of New Jersey, and doing business, among other places, in the state of New York, upon proper application therefor, for the consideration, therein expressed, of $63 30, and an agreement to pay a like sum to the defendant in every year thereafter, during the continuance of the policy, duly issued, on the 5th day of February, 1858, to the plaintiff, at Rochester, N. Y., a policy of insurance, whereby it did assure the life of Homer G. Robinson, of Rochester, N. Y., in the sum of three thousand dollars, for the term of his natural life, and whereby the defendant promised and agreed to pay, or cause to be paid, the said sum to the said plaintiff, or her assigns, within ninety days after due notice and proofs of the death of the said Homer G. Robinson, and whereby, in case the said assured should die before the decease of the said Homer G. Robinson, the amount of said insurance should be payable to the children of the said Homer G. Robinson and the plaintiff, or to their guardian, if under age, within the like period. On the 6th day of March, 1868, the said plaintiff and the said Homer G. Robinson, by an instrument partly printed and partly written, assigned, transferred and set over unto one Mortimer C. Mordoff, the above-named policy of insurance, and all moneys, interest, benefit and advantage whatever, then due, or thereafter to arise, or to be had or made, by virtue thereof, and the said defendant, on the 14th day of March, 1868, duly assented to such transfer in writing. Though the said assignment was absolute and unconditional in its terms, it was, nevertheless, intended by the parties thereto as collateral security to the said Mordoff for any premium which he should thereafter pay upon said policy of insurance, but the defendant had no knowledge or information of the scope or nature of said assignment, except as expressed by the written and printed terms of said assignment. The annual premiums provided for by said policy were, after the assignment of said policy as aforesaid, duly paid to the defendant by the said Mortimer C. Mordoff, as such assignee, down to and including the premium due and payable on the 5th day of February, 1876, amounting in all to the sum of about $500. The said Homer G. Robinson died at the city of Rochester, New York, on the 18th day of January, 1877. Proofs of loss were duly presented to the defendant by Mortimer C. Mordoff, assignee as aforesaid, on or about the 24th day of January, 1877, and he received from said defendant, on or about the 21st day of April, 1877, payment in full on the said policy, less the sum of about three hundred dollars reserved by said defendant to meet the notes of said Mordoff given in part payment for premiums. After the death

of the said Homer G. Robinson, the said Mordoff being then insolvent and in bankruptcy, and claiming to the plaintiff and her counsel that he had advanced to the plaintiff for her benefit and support large sums of money other than the payment of the premiums as aforesaid, entered into an oral agreement with the plaintiff and her counsel, whereby he, the said Mordoff, was to pay unto the plaintiff, and the plaintiff was to receive from him, in full satisfaction of her interest in and to said policy, the sum of one thousand dollars, and, from time to time between the 2d day of May, 1877, and the 13th day of September, 1877, the plaintiff did receive of the said Mordoff, of the said moneys so collected by him, the sum of $700, and, on or about the 9th day of November, 1877, the said Mordoff offered to pay the plaintiff the remaining $300 thereof, which the plaintiff refused to receive, in full settlement of her claim for the said moneys collected by him of the defendant. The said Homer G. Robinson left him surviving three infant children, besides his widow, the plaintiff in this action. No part of the sum secured by the policy has been paid by the defendant to the plaintiff, except as hereinbefore stated." Upon the foregoing facts, so found, the referee found, as conclusions of law: "1st. That the assignment, by the plaintiff, of the said policy to the said Mordoff, for the purpose of securing the payment of premiums thereon, was valid. 2d. That the plaintiff, having received at the hands of said Mordoff a portion of the moneys secured by said policy, is estopped from denying the validity of said assignment. 3d. That the plaintiff's complaint be dismissed."

The plaintiff, in due time, and prior to any report or findings by the referee, filed with the referee written requests that the referee would find, from the evidence, as follows: (1) That the assignment to Mordoff must be governed by the laws of the state of New York; (2) that the said assignment was null and void; (3) that, prior to the payment of the money to Mordoff, he had no authority from the plaintiff to receive it for her; (4) that Mordoff was in no sense the agent of the company to pay or compromise the claim; (5) that Mordoff was not the agent of the company for any purpose, nor did he claim to be acting for it; (6) that Mordoff was in no sense the agent of the plaintiff nor did he claim to be acting for her, either before or after receiving the money from the defendant; (7) that all that was done, as between the plaintiff and Mordoff, was done under and by virtue of the assignment alone; (8) that the plaintiff has never entered into any agreement with the defendant to take less than the amount of her claim; (9) that the defendant has never paid the plaintiff any portion of the amount due upon said policy. The referee, in connection with the findings in his report, declined to find one

way or the other on the foregoing requests, except as found or necessarily implied in his report.

The plaintiff, in due time, filed exceptions "to the report and conclusions of law" of the referee, "and to each and every part thereof." These exceptions embrace three several exceptions to the three several conclusions of law, and an exception to the refusal of the referee to find as requested in said requests "and each and every thereof."

The plaintiff, on the pleadings and proceedings in the cause, and on a case containing the evidence and proceedings before the referee, now moves the court to set aside the report of the referee, and for a new trial. The defendant contends that the court has no power to grant a new trial in this case. It is apparent that the case must be considered as if an order of reference, in pursuance of the stipulation to refer, had been entered thereon at the time the stipulation was made. Either party is entitled now to have such order entered nunc pro tunc. The parties, in stipulating in writing to refer the cause to Mr. Macomber, "to hear, try and determine the issues therein," must be held to have referred to the practice of the courts of the state in regard to references by consent. Such a reference, by consent, of all the issues in an action, is provided for by section 1011 of the Code of Civil Procedure of New York. By section 1023 such requests to find as were made by the plaintiff in this case, are provided for. Provision is also made by the said Code (section 992) for exceptions to the ruling of a referee on a question of law arising on the trial of an issue of fact, and it is declared (section 993) that, on the trial of an issue of fact by a referee, a refusal to make any finding whatever upon a question of fact, where a request to find thereupon is seasonably made, or a finding without any evidence tending to sustain it, is a ruling upon a question of law, within the meaning of section 992. It is also provided (section 994) that, where an issue of fact is tried by a referee, an exception to a ruling, upon a question of law, made after the cause is finally submitted, may be taken within a prescribed time and in a prescribed manner, after the report of the referee is made. Provision is also made by said code for a review by the court of rulings so excepted to. The fact that, in a given case, under the state practice, the review is to be by an appeal to the general term of the court in which the suit is pending, from a final judgment rendered upon a trial by a referee, and that such appeal may be taken upon questions of law, or upon the facts, or upon both, as provided by section 1346 of said Code, is of no importance. There is no general term of this court, and the statutes of the United States do not provide for any specific appeal or form of review, in this court, in respect of a trial before a referee, of a suit pending in this court. The conformity in practice and forms and modes of

proceeding in a civil suit at common law in this court, to the practice and forms and modes of proceeding in like causes in the courts of record of the state, required by section 914 of the Revised Statutes, is only required to be a conformity "as near as may be." References by consent are authorized in this court in cases like the present. Alexandria Canal Co. v. Swan, 5 How. [46 U. S.] 89; York, etc., R. Co. v. Myers, 18 How. [59 U. S.] 246; Heckers v. Fowler, 2 Wall. [69 U. S.] 123. Provision is made by section 649 of the Revised Statutes, for the trial and determination by the court of issues of fact in civil cases in a circuit court, without the intervention of a jury, when a stipulation in writing waiving a jury is filed, and it is declared that "the finding of the court upon the facts, which may be either general or special, shall have the same effect as the verdict of a jury." Provision is also made, by section 700, for the making of a bill of exceptions, on such trial by the court, presenting the rulings of the court in the progress of the trial, and the exceptions thereto, and for the review of such rulings by the supreme court, on writ of error or appeal. It is also provided by section 726, that all the courts of the United States "shall have power to grant new trials, in cases where there has been a trial by jury, for reasons for which new trials have usually been generally granted by the courts of law." The practice of the courts of the state, in regard to references, and reports and reviews thereof, in the particulars above mentioned, under the present Code of Civil Procedure, are not substantially different from the prior practice under the prior Code and the decisions thereunder. In view of such practice and of the provisions of the statutes of the United States, this court, in June, 1876 [Fed. Cas. Appendix], made a rule in these words: "In actions at law, a consent to a reference of the whole issue must likewise contain a provision that judgment shall not be entered until after ten days' notice of the filing of the report of the referee and of the judgment proposed to be entered thereon. After a reference, at any time before the entry of judgment, either party may move for a new trial upon a case or exceptions, and, if such motion be denied, the decision of the motion and the questions involved in it may be entered on the record, as if it had been a ruling made upon a trial by the judge without a jury, and excepted to in like manner. When a motion for a new trial is intended to be made, the court may extend the time for entering judgment, upon the application of the moving party, and may stay all other proceedings until the decision of the motion." A like rule was made in the circuit court for the Southern district of New York, in February, 1877. [Fed. Cas. Appendix.] There is no doubt of the power of the court to grant a new trial where the case has been tried by a jury. Consent to a trial by the court carries with it power to the court to grant a new trial. Consent to a trial by a referee carries with it power to the court to grant a new trial. The consent in this case was made in view of the rule of June, 1876. The court had power to make such rule. The provision therein made for moving for a new trial, before judgment, after a reference by consent, is a conformity "as near as may be" to the state practice, in connection with the statutes of the United States.

The case of Neafie v. Cheesebrough [Case No. 10,064] does not apply to the present case. In that case, a judgment had been entered, on the report of a referee appointed by consent, to hear and determine all the issues. The court held that it had no authority, after judgment, to grant a new trial of a cause tried by a referee, and that the case was not one specially provided for by section 987 of the Revised Statutes, authorizing a petition for a new trial after judgment, because the judgment was not entered on a verdict, or on a finding of the court on the facts. In the present case, there has been no judgment entered. It follows, that this court has power to entertain this motion.

The referee finds, that the assignment of the policy to Mordoff was intended, by the parties thereto, as collateral security to Mordoff for any premium which he should thereafter pay upon the policy; that, after such assignment, the annual premiums provided for by the policy were duly paid to the defendant by Mordoff, as such assignee, down to and including the last premium which became due, amounting, in all, to about $500; and that such assignment, for the purpose of securing the payment of premiums on the policy, was valid. It is contended, by the plaintiff, that the interest which she had in the policy, at the time it was assigned, was absolutely inalienable for any purpose, and that the assignment of it was absolutely void. The policy was made February 5th, 1858. The assignment was made March 6th, 1868.

The policy in question was issued while the statute of New York, passed April 1st, 1840 (Laws N. Y. 1840, p. 59, c. 80), was in force. That statute was in these words: "Section 1. It shall be lawful for any married woman, by herself and in her name, or in the name of any third person, with his assent, as her trustee, to cause to be insured, for her sole use, the life of her husband, for any definite period, or for the term of his natural life; and, in case of her surviving her husband, the sum or net amount of the insurance becoming due and payable, by the terms of the insurance, shall be payable to her, to and for her own use, free from the claims of the representatives of her husband, or of any of his creditors; but such exemption shall not apply where the amount of premium annually paid shall exceed three hundred dollars. Sec. 2. In case of the death of the wife before the decease of her husband, the amount of the insurance may be

made payable, after her death, to her children, for their use, and to their guardian, if under age." Some of the provisions of the policy, in the present case, would appear to have reference to some of the provisions of this statute, although the defendant is a New Jersey corporation, and the amount insured is made payable to "Helen S. Robinson, or assigns." The statute says, that the married woman may cause her husband's life to be insured, "for her sole use;" and that, if she does so, then, if she survives her husband, the insurance money payable, by the terms of the insurance, (one of which terms is, that the insurance shall be made "for her sole use,") shall be payable to her for her own use, free from the claims of the representatives or creditors of her husband. The second section of the statute provides, that the policy may make the insurance money payable to her children, for their use, and to their guardian, if they are under age, in case the woman dies before her husband dies. This section may have been looked to in the provision in this policy respecting the death of Helen S. Robinson before the death of Homer G. Robinson. But the second section has reference only to a policy where the insurance is such an insurance as the first section provides for, namely, a policy containing an insurance for the sole use of the woman. The present policy is not, in terms, a policy for the "sole use" of the woman, because, on its face, she and the company contract with each other, that, in case she survives her husband, the amount of the policy shall be payable to her, if she has not assigned the policy, and to her assignee, if she has assigned it.

On the 14th of April, 1858 (Laws N. Y. 1858, p. 306, c. 187), an act was passed amending the act of 1840, in the following particulars—changing the words "her husband," where they occur the third time, in section 1, to "the husband," and, after the words "annually paid," in section 1, inserting the words, "out of the funds or property of the husband." In all other respects the act of 1840 was re-enacted. On the 28th of March, 1862 (Laws N. Y. 1862, p. 214, c. 70), an act was passed amending section 2 of the act of 1858 (which was precisely like section 2 of the act of 1840), so as to read thus: "The amount of the insurance may be made payable, in case of the death of the wife before the decease of her husband, to his or to her children, for their use, as shall be provided in the policy of insurance, and to their guardian, if under age." On the 18th of April, 1866 (Laws N. Y. 1866, p. 1413, c. 656), an act was passed amending the act of 1858, in the following particulars—striking out the words "her husband," where they occur the second time, in section 1, and inserting, in their place, the words "such period or term;" and amending section 2, as found in the act of 1862, by striking out the words, "decease of her husband, to his or to her," and inserting in their place the words, "before the period at which it becomes due, to her husband, or to his, her or their." This was all the legislation on the subject before the assignment in this case was made, on the 6th of March, 1868. There was no other restriction on the assignability of the policy than what is to be implied from the language above cited, and the statutes, by their terms, apply wholly to policies where the woman causes the life of her husband to be insured "for her sole use," and do not, by their terms, apply to policies where the contract provides that the insurance money shall, if the husband dies before the wife, be paid to her "or assigns." The statute provides, that, where the insurance is effected by the woman "for her sole use," the representatives and creditors of the husband shall not, if she survives him, have any claim on the insurance money, but it does not, in terms, provide, that, where the insurance is effected by the woman not "for her sole use," but under an express contract by her with the company, that the money shall, if she survives her husband, be payable to her "or assigns," she shall not be allowed to assign the policy, before either she or her husband dies, or that the assignee shall not acquire any interest by an assignment so made.

This statute has, however, been under consideration in the court of appeals of New York. In Eadie v. Slimmon, 26 N. Y. 9, a New York company insured the life of the plaintiff's husband in 1852. He died in 1859, before her. The contest in the suit was between her and the defendant, who claimed the insurance money, $2,000, under an assignment made to him by her. The money had been deposited in court by the company. She alleged that the assignment was void because obtained from her by coercion. The policy recited the payment by the wife of the premium for the first year, and insured the life of her husband for her "sole use and benefit," and, by its terms, the company agreed with her, "her executors, administrators and assigns," to pay the sum insured to her, her personal representatives or assigns, "for her sole use," and that, in case she should die before him, the amount of the insurance should be payable, after her death, to her children, for their use, or to their guardian, if under age. This was distinctly a policy under the act of 1840. The insurance was expressed to be for the sole use of the wife, and, although, by the policy, the company agreed with her or her assigns to pay the sum insured to her or her assigns, in case she survived her husband, yet in such case the policy expressly said that any payment to her assigns was to be "for her sole use." The case was tried by the special term of the supreme court without a jury, and the court found, as matter of fact, that the assignment was procured by coercion, and was void, and that it was

also invalid as having been made as security for a debt of the husband, and not for any consideration going to the wife or to her separate estate. The defendant had been in possession of the policy from the time of the assignment, and had paid the annual premium thereon for two successive years. The judgment was that the defendant be paid the amount of the two premiums paid by him, with interest, and that the plaintiff receive the remainder of the fund. On appeal, the general term reversed the judgment on the fact and the law, and ordered a new trial. The plaintiff appealed to the court of appeals. That court had the case before it twice. On the first occasion the court held that the assignment was void because obtained by undue influence; and a majority of the court held, that the policy was issued and taken under the act of 1840 and was not assignable. A motion for a re-argument was made, and the court held, that the defendant's only title to the money was founded on the assignment; that the validity of the assignment was in issue; that a wife insured under the act of 1840 could not assign her policy as though it were realized personal property, or an ordinary security for money; that the non-assignability of the policy appeared on its face; and that the motion for a rehearing ought to be denied.

In Barry v. Equitable Life Soc., 59 N. Y. 587, a New York corporation, in May, 1868, when the legislation of New York was the same as in the present case, issued to the plaintiff, the wife of one Barry, on his application, a policy of insurance on his life, for the sole use of the plaintiff. The policy stated that it was issued in conformity with the act of 1840, as amended, and by it the company agreed to pay the amount of the insurance, $10,000, to the plaintiff, "for her sole use," if living, in conformity with the statute, and, if not living, to the children of Barry, or their guardian, for their use. The plaintiff, in July, 1871, on the procurement of Barry, signed a blank assignment of the policy, under duress and coercion, and never received any consideration for signing it. The assignment was afterwards filled up and delivered to the defendant Brune, by Barry, as collateral security to Brune for a debt of Barry's firm to Brune. Brune assigned the policy to the defendant Whitredge in February, 1872, and Barry died in March, 1872. The plaintiff brought the suit to determine the conflicting claims of herself and the defendants Brune and Whitredge to the $10,000. The special term and the general term of the supreme court gave judgment for the plaintiff. Brune and Whitredge appealed to the court of appeals. Of the eight judges of that court five sat in the case. All of the five concurred in affirming the judgment on the ground of coercion. Three of the judges (Church, C. J., Allen and Andrews) concurred in the view, that the policy was issued with an eye to

the provisions of the act of 1840, as amended in 1858, 1862 and 1866; that it was expressed to be in conformity to the statute; that the terms of the contract, to pay on the termination of the life insured, were in close pursuance of the provisions of the act; that the act, as amended, was still operative, notwithstanding the subsequent legislation enlarging the legal status of married women; and that there was no subsequent legislation taking the place of that in the act of 1840, exempting the insurance money from the claim of the personal representatives and creditors of the husband whose life had been insured in accordance with its enabling provisions. The opinion (Folger, J., stating the views of the court) adds: "This being so, the majority of the judges taking part in the decision feel not only bound to follow Eadie v. Slimmon, 26 N. Y. 9, upon the principle of stare decisis, but as convinced that the decision of that case was correct in its result." The opinion then states, that the decision in Eadie v. Slimmon went (in its denial of a motion for re-argument) on several grounds. It states those grounds, and, among them, the last, "that the act was special and peculiar, and looked to a provision for a state of widowhood and orphanage; and that it would be a violation of the spirit of the provision, to hold that a wife insured under that act could sell or traffic with her policy as though it were realized personal property or an ordinary security for money." The opinion then proceeds thus: "Upon this latter ground, the majority of the judges taking part in this decision now put their assent to Eadie v. Slimmon, and upon that ground also are for the affirmance of the judgment in this case. Without that act, when this policy was issued, the insurance money, being for premiums paid out of the funds or property of the husband, could not have been retained from the personal representatives or creditors. That act sought that result, not for the sake of the woman while a wife, but when a widow; not that she might sell or assign the contingency which was created by the policy, but that it should be kept for her until, by the death of her husband, she surviving, it became realized personal property; or, for the children, when, by his death, after surviving her, it became realized personal property to them surviving. The majority of the judges taking part think that this is the policy and intention of the act and that it still exists; that the contract for insurance was issued under it and is controlled by it; and that the power of disposition over it is and should be restricted so as to be in accordance therewith. They further think, that the subsequent legislation, enlarging the legal capacity of married women, does not supersede the act of 1840, nor give them other power to deal with a policy issued under it, than they had by it. * * * The minority do not think the determination of this question necessary to a de-

cision of the case, and, doubting whether the effect of the married woman's act is not more sweeping than here allowed to be, express no opinion."

In Wilson v. Lawrence, 8 Hun, 593, the plaintiff, the widow of one Wilson, brought suit against an insurance company to recover $2,500, the amount of a policy of life insurance on the life of her deceased husband. The policy was issued in October, 1868. It recited that it was made in consideration of a premium paid by the plaintiff to the company, and insured the life of the husband, for life. In it the company agreed "with the said assured, her executors, administrators or assigns," to pay the sum insured "to the said assured, her executors, administrators or assigns." The policy was assigned, by the plaintiff, to one Lawrence, in April, 1873. The husband died in September, 1875. The acts of 1858 and 1866 had been amended by the act of April 18th, 1870 (Laws N. Y. 1870, p. 612, c. 277), but not so as to affect that case. Lawrence was substituted as a defendant in the suit, in place of the company, and the latter paid the money into court. It appeared, on the trial, that the plaintiff paid the premiums on the policy. The special term of the supreme court gave judgment for the plaintiff. On appeal, the general term reversed the judgment. One ground of reversal was, that the plaintiff had no proper complaint. Another was, that, as the special term had found that the policy was assigned by the plaintiff to Lawrence, for a consideration of $2,000 paid by him to her and her husband, it was not proper to restore the policy to the plaintiff, and declare the assignment invalid, without requiring her to restore the $2,000 to Lawrence, and that, therefore, it was error to award any more of the fund in court to the plaintiff than the excess over the $2,000, and interest. The court stated, that this view proceeded on the assumption, that, as the plaintiff, before the assignment of the policy, was its absolute owner, she must have received the $2,000 to her own use. The case was tried again. The second report of it is in 13 Hun, 238. The plaintiff claimed that the assignment was procured by coercion, and that it was void, on the ground that her interest in the policy was not assignable. The special term found that the assignment was not procured by coercion, but it held the assignment void, on the ground that the plaintiff's interest was not assignable, and judgment was ordered for the plaintiff, entitling her to the money in court. The special term found, as facts, that nothing was paid to the plaintiff on the assignment, and that the only consideration for it was the cancellation and delivery to the plaintiff's husband, of his promissory notes for $2,000 held by the defendant. On appeal, the general term held, that the finding as to the consideration did not change the equity of the case as to the restoration to the defendant of that with which he had parted,

but that, if the assignment was absolutely void, such equitable view was of no moment. The court proceeded to discuss the question as to whether the policy was made under the act of 1840. The opinion says: "It does not refer to the act in terms, and its only provision respecting payment is, that the company will pay to the assured, (the plaintiff,) her executors, administrators or assigns. The policy purports to be a contract with the wife, and it recites the payment of the first premium by her. On its face, it is a policy which would have been valid at common law, which recognized an insurable interest of a wife in the life of her husband. But the court found, on the last trial, that the policy was issued upon the application of the husband, and that he paid all the premiums. Those circumstances, and the fact that the policy was not payable till his death, warranted the further finding of the trial court, that the husband designed the policy as a provision for the support of the plaintiff during widowhood. The policy is, therefore, to be regarded as within the equity of the statute, and, consequently, not assignable. The circumstance, that the policy made no provision for children, does not militate against the idea that it was made in view of the statute, as there is no evidence that the plaintiff or her husband had children. These views do not conflict with the decision on the first appeal, as it there appeared that the premiums were paid by the wife." The judgment was affirmed. The defendant then appealed to the court of appeals. That court recently affirmed (76 N. Y. 585) the judgment of the general term. The whole of the opinion delivered by it was in these words: "We think that this case is governed by the decisions in Eadie v. Slimmon, 26 N. Y. 9, and Barry v. Brune, 59 N. Y. 587. Upon the authority of those cases, the policy in question must be held to have been inalienable, and the assignment to Mr. Lawrence absolutely void. The judgment is affirmed." I have been furnished with copies of the record and of the briefs presented to the court of appeals. The record shows that the special term found as facts: (1) That the policy was issued for the sole use and benefit of the plaintiff; (2) that it was issued on the application of the husband, and on the payment by him of the premium due at the time it was issued; (3) that all the premiums payable during the husband's life were paid by him; (4) that the insurance was designed by him as a provision for the support of the plaintiff, in the event of his death, and during her widowhood; (5) that the assignment was made in payment of a debt of $2,000 from the husband to Lawrence; (6) that the policy was delivered to Lawrence, and he surrendered to the husband the evidences of the debt; (7) that the plaintiff never received any consideration for the assignment. The court found, as conclusions of law: (1) That the policy was not assignable;

(2) that the assignment was void; (3) that the plaintiff was entitled to the money in court. The defendant excepted to the above findings of fact, 1, 4 and 7, and to the three conclusions of law. The judge, at special term, in his opinion, held, that the case fell within the statutes, and within the cases in 26 N. Y. and 59 N. Y., because (1) the husband arranged for the insurance; (2) the husband paid all the premiums during his lifetime; (3) the wife assigned the policy, at her husband's request, to pay an existing debt of his, she receiving no consideration therefor. The general term, as we have seen (13 Hun, 238), proceeded on the same grounds. The opinion of the court of appeals must be held to have proceeded on the same views. The plaintiff's counsel, in his brief before the court of appeals, contended that the policy fell within the statutes, as a provision made by the husband for the wife's widowhood, because it fell within the provisions which permitted the husband to pay the premiums for the insurance from his own property, and which exempted the insurance so effected from the claims of his creditors. Stress was laid on the fact that the husband paid all the premiums due on the policy, both before and after the transfer to the defendant, as making the policy non-assignable by the wife.

None of the cases above cited are like the present case. In Eadie v. Slimmon the policy was assigned as security for a debt of the husband's, and not for any consideration going to the wife or to her separate estate. The same fact existed in Barry v. Equitable Life Soc., and, in that case, in the opinion of the court of appeals, the statute and the case of Eadie v. Slimmon are referred to as applying only to cases where the premiums are paid out of the funds or property of the husband. In Wilson v. Lawrence, the only consideration for the assignment was the payment of a debt of the husband's, and the husband paid all the premiums. In the report of the case of Barry v. Equitable Life Soc., at special term, 14 Abb. Prac. (N. S.) 385, it is stated, in the decision of Judge Van Brunt, that all the premiums were paid by the husband. Assuming that the policy in the present case was a New York contract and fell within the statutes of New York, there is no decision of the courts of New York holding that such an assignment as was made in the present case, of such a policy as the one under consideration, is not valid.

In Connecticut Life Ins. Co. v. Burroughs, 34 Conn. 305, 313, the court comments on the decision in Eadie v. Slimmon and says that the reasoning "seems to go so far as to hold, that a policy of this description, prior to the decease of the husband, is absolutely and under all circumstances unassignable by the wife." It adds: "That such should be the law applicable to a policy the premiums on which were paid by the husband, certainly seems reasonable and just; while, on the other hand, if the wife paid the premiums from her own separate estate, it is difficult to suggest a reason why she should not have the same power to assign her interest in the policy that she has to assign any other chose in action belonging to her."

The policy of the statutes of New York, as interpreted by the highest court of New York, while it requires that the assignment in the present case, if made to pay or secure a debt of the husband's, should not be upheld, does not forbid the assignment by the wife, when the object of the assignment is to keep the policy alive by insuring the payment of the premiums as they recur. In the present case, the evidence shows that that was the real object of the assignment and that the assignee carried out strictly and in good faith his agreement. As the wife survived her husband, no rights of any children intervene. The question is one solely between her and rights arising under the assignment, whether, as against her, such rights are valid. It would be a very inequitable interpretation of a statute the object of which is to secure life insurance money exclusively for the benefit of the wife, to hold that she cannot assign the policy for the purpose of keeping it in life. In the absence of fraud or coercion in procuring the assignment, it would be enabling her to perpetrate a fraud, if, as against the assignee and the insurance company who have acted in good faith thereon, it should be held that she could recover the amount of the policy from the company, in a case like the present. Not only is the policy payable to her "or assigns," but it provides that it shall cease if the annual premiums shall not be punctually paid, and that in such case all previous payments of premiums and all profits shall be forfeited to the company. On all the facts in this case, the assignment must be held to have been valid, according to its terms, so as to be a defence to the claim now made by the plaintiff, upon the policy, against the company. If, as between the plaintiff and Mordoff, he was her trustee of the money after he received it from the company, and liable to account to her for it, subject to his claims upon it, both as having paid the premiums upon it, and as her creditor otherwise, yet, as between her and the company, the assignment was a full authority from her to Mordoff to collect the money for her from the company and a full authority from her to the company to pay it to Mordoff. Aside from this, she, with full knowledge of the fact that Mordoff had collected the money from the company on the policy, under and by virtue of the assignment, ratified such receipt of the money by Mordoff, in such manner as to be estopped from denying, as against the company, the validity of the authority of Mordoff to receive the money. Her right of action on the policy, in this suit, is gone. She received a part of the money, as a part of the money paid by the company.

She does not offer to return it to the company. Her acts were such as to amount to a ratification of the whole transaction, at a time when she was called upon to repudiate it, if she were ever to do so. Story, Ag. §§ 239, 242, 250. The ratification enured to the benefit of the company. Id. § 241. The present is not a suit between the plaintiff and Mordoff, as to the disposition which ought, as between her and him, to be made of the money received from the company. The contest was precisely of that character in the three cases in the New York court of appeals. The question in the present case is solely whether the company ought to pay a second time to the plaintiff the money which it paid to Mordoff.

There is no proper ground, in the evidence, for interfering with the findings of fact made by the referee, nor was there any error in the refusal of the referee to find one way or the other on the requests to find made by the plaintiff, except as found or necessarily implied in his report. The exceptions to the rulings of the referee in the course of the trial have been examined, and no ground is found, in any of them, for granting a new trial.

Judgment will be entered for the defendant, on the report of the referee, with costs.